DECISION AND JUDGMENT ENTRY
This is an appeal from a judgment of the Lucas County Court of Common Pleas, Juvenile Division, which granted permanent custody of Darnae H. to appellee, Lucas County Children Services ("LCCS"), and terminated the parental rights of appellant, Victoria H., the natural mother of Darnae H.
To fully comprehend the circumstances of the present case, we must first discuss the life history of appellant, Victoria H. Appellant was born on April 7, 1983 to Tammy H. and, allegedly, Jeronica H. LCCS became involved with Tammy H., appellant and appellant's siblings in 1990, when the agency was given temporary custody of the children for approximately one year. On March 7, 1996, LCCS was awarded emergency temporary custody of appellant due to concerns of sexual abuse and neglect. Appellant was then placed with her grandmother. On April 30, 1996, shortly after her thirteenth birthday, appellant gave birth to Darnae. Darnae's father is Robert S., an eighteen year old man whom appellant's mother, Tammy H., allowed to reside in the family home. Tammy H. also had a sexual relationship with Robert S. and encouraged appellant's sexual relationship with him. On June 25, 1996, LCCS filed a complaint in dependency, neglect and abuse regarding appellant and her younger siblings, Heather and Johnny. As a result of those proceedings, temporary custody of all three children was awarded to LCCS and a no-contact order was put into place prohibiting contact between appellant and her mother and between appellant and Robert S. Subsequently, Tammy H. was convicted of child endangering and sentenced to six months incarceration. In addition, Robert S. was convicted of corruption of a minor and was sentenced to one and one-half years incarceration.
On August 26, 1996, appellant was found to be an abused child and the court continued the prior no-contact order between appellant and Tammy H. and Robert S. On June 19, 1997, LCCS filed a motion for permanent custody of appellant and her siblings. As a result of those proceedings, LCCS was awarded legal custody of appellant and permanent custody of Heather and Johnny. This court subsequently affirmed that award. See In the Matter of: VictoriaH. (Feb. 5, 1999), Lucas App. No. L-98-1058, unreported.
LCCS first became involved in custody issues regarding Darnae shortly after his birth. On August 26, 1996, the lower court found Darnae to be a dependent child and awarded temporary custody of him to LCCS. Nevertheless, Darnae was placed with appellant's maternal grandmother with whom appellant was then living. Subsequently, appellant successfully completed case plan services, and on May 14, 1998, legal custody of Darnae was returned to appellant with LCCS maintaining protective supervision of Darnae. At this time, appellant and Darnae were living with a foster family. In the summer of 1998, however, appellant's mother, Tammy H., and Darnae's father, Robert S., were released from incarceration and returned to the Toledo area. Thereafter, appellant, in violation of the no-contact order, began spending time with both Tammy H. and Robert S. In addition, in September 1998, appellant began skipping school, refused to abide by the rules of her foster home, and, on several occasions, left the foster home with Darnae, staying out all night. In mid-September, appellant and Robert S. were involved in a physical fight after which Robert S. was arrested and charged with assault. Finally, during that time period, appellant again became pregnant by Robert S.
On September 25, 1998, emergency shelter care custody of Darnae was awarded to LCCS. On September 28, 1998, LCCS filed a complaint in dependency and neglect seeking permanent custody of Darnae. The complaint alleged that appellant had not consistently provided adequate care for Darnae since custody was returned to her and she had violated the no-contact orders by maintaining contact with Tammy H. and Robert S. The complaint further alleged that on several occasions, appellant had failed to watch Darnae, resulting in his wandering out to a bus stop on a busy street and wandering away in a mall. The complaint alleged that on both occasions, appellant did not know of Darnae's whereabouts. Finally, the complaint alleged that appellant is developmentally delayed, receives SSI income, attends classes for the developmentally handicapped and that LCCS has provided other services to her, including parenting classes, counseling, sexual abuse treatment and psychiatric treatment. Nevertheless, the complaint asserted that Darnae cannot and/or should not be placed with appellant within a reasonable time and that an award of permanent custody of Darnae to LCCS was in his best interest. After the filing of the complaint, appellant was given a case plan which required her to participate in parenting classes, submit to a psychological assessment, and follow any and all recommendations of the service providers.
On November 24, 1998, the case proceeded to an adjudication hearing to determine whether Darnae was a dependent or neglected child. Dana Charles, appellant's and Darnae's foster mother since July 8, 1997, initially testified as to the house rules which appellant was expected follow in her home. Charles stated that appellant was expected to go to school and after school was expected to go either to Charles' mother's home or to Homes With A Heart, a foster home agency. When Charles got off work, she would then pick up appellant and they would then pick up Darnae from day care. Charles testified, however, that in the fall of 1998, appellant did not follow the required schedule and missed several weeks of school. During this time, appellant would leave the house in the morning, taking Darnae with her, and would not return until her curfew of 10:00 p.m. or later, and on several occasions did not come home at all. Subsequently, Charles learned that appellant was spending time with her mother and Robert S. in violation of the no-contact order. She also subsequently learned that Robert S. had assaulted appellant during one occasion when appellant was with him. Although Charles could not say for certain that Darnae was with appellant during this incident, she did state that appellant took Darnae with her on that day. Around this same time, Charles learned that appellant had renewed her sexual relationship with Robert S. and was again pregnant. Charles further relayed an incident in the fall of 1998 when Darnae was found wandering by a bus stop. Charles stated that appellant left Darnae alone in the kitchen and when she returned he was gone. Shortly thereafter, some children from the neighborhood ran into the house and said that they had just seen Darnae at the bus stop.
Next, Gary Edward, the Executive Director of the Homes With A Heart foster home agency, testified. Edward stated that in the summer and fall of 1998, he became concerned about appellant and Darnae after learning that appellant was taking Darnae with her and staying out all night. He subsequently learned that appellant had renewed her relationship with Robert S., also known as "Snow," and that on the day when Snow assaulted appellant, Darnae was being cared for by appellant's fourteen year old sister, Heather, at Tammy H.'s home. Edward testified that Heather is self-destructive and suicidal and is not an appropriate caretaker for Darnae. When Edward questioned appellant about her contact with Tammy H., appellant replied that no one could stop her from seeing her mother. Edward, therefore, became increasingly concerned for Darnae's welfare and relayed his concerns to Melanie Webb, appellant's caseworker. Edward further warned appellant that by continuing her behavior she was at risk of losing her son.
Appellee next called Melanie Webb, the caseworker assigned to this matter, to testify. Webb stated that she has been involved with appellant's family since August 1995, and that LCCS originally obtained custody of Darnae soon after his birth in 1996. At that time, appellant and Darnae were placed together in various foster homes and appellant was given case plan services to help her learn to parent her child. In the spring of 1998, custody of Darnae was returned to appellant after appellant successfully completed her case plan. At this time, Tammy H. and Robert S. were still incarcerated on charges after being convicted of offenses relating to the sexual abuse of appellant. After Tammy H. and Robert S. were released from prison in the summer of 1998, however, appellant's behavior began to deteriorate. Despite the no-contact order, appellant renewed relationships with both Tammy H. and Robert S. and was not receptive to advice that she could not have contact with them. By the time LCCS filed the permanent custody complaint in September 1998, appellant was again pregnant by Robert S., and Robert S. had been reincarcerated for the physical assault of appellant and for a parole violation. Webb further testified that Robert S. had not had any official contact with Darnae through LCCS but that appellant had brought Darnae to visit his father. In explaining the origin of appellant's relationship with Robert S., which Webb learned from appellant, Webb testified that in 1995, a number of males, including Robert S., lived in Tammy H.'s home and Tammy H. did not have food for the children. Robert S. would therefore buy appellant food and appellant felt that in return she needed to please him by having a sexual relationship with him. Tammy H. encouraged this relationship. Webb also expressed her concerns over appellant's inability to look after her child and discussed the incident when Darnae was found at a bus stop. Webb also relayed an incident when she was overseeing a visit between appellant, Darnae and appellant's siblings at a mall. On two occasions during that visit, Darnae wandered off and appellant was slow to notice.
Appellant then called two witnesses, Cassandra Quinn and Shelly Falkenberg, to testify on her behalf. Quinn is the placement coordinator at Homes With A Heart and at the time of the hearing below had known appellant for approximately two years. She testified that she sees appellant two or three times per week and that prior to Darnae's removal she saw appellant and Darnae together regularly in that she helped with their transportation. Quinn further stated appellant's parenting abilities have improved since she first came to the agency, that appellant responds well to advice regarding Darnae, that Darnae's basic needs are being met and that appellant and Darnae are well bonded.
Finally, Shelly Falkenberg, the coordinator of the parenting education program at St. Vincent's Medical Center, testified regarding her contact with appellant and Darnae. She stated that she has known appellant since December 1996, when appellant began attending the parenting program and that appellant has attended parenting class fifty-one times. In Falkenberg's opinion, appellant's attendance record in the parenting classes was good given her age; however, she admitted that over the two years that appellant was in the program she attended less than half of the classes. Falkenberg further stated that since January of 1998, appellant's parenting skills and supervision of Darnae improved and she became well bonded with Darnae. She further testified, however, that appellant still fluctuates between being an adolescent and being a mother. In this regard, Falkenberg stated that in September 1998, appellant was not coming to parenting class, was not going to school and was not keeping her curfew. Appellant also told Falkenberg that she had taken Darnae to see Tammy H. because she wanted her son to see his grandmother. Falkenberg discussed with appellant her relationship with Robert S. and Tammy H. and told appellant that it was irresponsible for appellant and Darnae to be around these people given their history. Appellant, however, was not receptive to those suggestions, continued to maintain a relationship with both Tammy H. and Robert S., and even carved Robert S.'s street name, "Snow," into her arm. Appellant was further unreceptive to the referral that she attend counseling to help resolve the issues that remained regarding appellant's relationship with her mother. Falkenberg opined that appellant put Darnae at risk by exposing him to Tammy H. and Robert S.
At the conclusion of the adjudication hearing, the court found Darnae to be dependent and neglected. The court reconvened on March 11, 1999, for the disposition hearing at which the following evidence was presented. Ron Zuidema, a therapist at Harbor Behavioral Health Care, testified that on November 9, 1998, he completed a diagnostic assessment of appellant after meeting with her for approximately one and one-half hours. That assessment was submitted as evidence in the hearing below. Zuidema testified that appellant, while fifteen years old, had a low intellect and had the maturity of a twelve or thirteen year old. He further stated that she was unruly, disrespectful, verbally and physically aggressive and failed to follow directions. Specifically, appellant told Zuidema that she was ignoring the no-contact orders. Zuidema told appellant that her parental duties would have to come first and that she would have to give up normal teenage behaviors but appellant was not receptive to that advice. Zuidema diagnosed appellant as having oppositional defiant disorder, which was characterized as defiance at home, refusing to go to school and not following through on parenting. For treatment, Zuidema recommended that appellant attend a managing emotions class and gave appellant a specific date on which to begin treatment, but appellant did not follow through with that program. Zuidema further testified that after Darnae was removed from appellant's care, she only saw him once a week despite having the opportunity to see him twice per week.
Next, Gary Edward, from Homes With A Heart, testified regarding his contact with appellant since the adjudication hearing. Edward stated that since that hearing, he brought charges against appellant in juvenile court primarily based on appellant's truancy from school and verbal abuse of her foster parents. The charges were submitted to mediation but that mediation was unsuccessful because appellant refused to regularly attend school. Appellant also refused to participate in programs at the agency as directed.
Stephan Phillips, Robert S.'s parole officer testified next. Phillips explained Robert S.'s criminal history as follows. Robert S. was released from prison and placed on post-release control on July 7, 1998, after serving a sentence for corruption of a minor. That conviction arose out of his sexual relationship with appellant. In September 1998, Phillips was notified that Robert S. had been charged with assaulting appellant. Accordingly, the parole authority placed him in custody. Subsequently, Robert S. was convicted of assault and was also found to have violated the terms of his supervision by assaulting appellant and by failing to notify the sheriff of his change of address. Based on those violations, Robert S. was sentenced to an additional one hundred days incarceration.
Appellee next called Melanie Webb, the caseworker, to testify as to disposition. Webb stated that Darnae was initially removed from appellant's custody shortly after his birth but that during the two years following that removal, appellant successfully complied with her case plan services and custody of Darnae was returned to her. At that time, Webb believed that reunification was safe. In September 1998, however, Darnae was removed from appellant's custody for a second time because she was staying out all night with Darnae and away from the foster home without telling anyone where she was. In addition, the foster parents reported concerns that appellant could not properly care for Darnae and would not accept guidance in caring for him. As such, LCCS was concerned that appellant was placing Darnae at risk and on September 25, 1998, removed him from appellant's custody. Webb then testified as to appellant's progress and attitude following that removal. Initially, she stated that appellant was required to have a diagnostic assessment which she did complete. After that assessment, however, it was recommended that appellant attend a managing emotions class. She did not follow through with that recommendation. She also was not consistent in her parenting class attendance and had a very hard time following rules set down for her by adults. Her attitude was essentially that no one could make her do anything that she did not want to do. In that regard, she refused to comply with the no-contact order. Webb also testified as to appellant's attitude regarding Robert S. In appellant's view, Robert S. was her child's father and she saw no harm in his hitting her because her mother was treated the same way by the men she was involved with. As to her aspirations for Darnae, appellant had started calling him Little Snow. It is worth noting here that Robert S. was a member of the Bloods gang and appellant stated that she became a member of the Bloods when she had sexual relations with Robert S. When Darnae's foster parents dressed him in colors that went against the Bloods gang colors, appellant viewed that as Darnae disrespecting the gang. Webb testified that she saw no indication in appellant that she was willing to discontinue her contact with Robert S. Appellant further failed to grasp the need for her to abide by the no-contact order with regard to her mother. Appellant's visits with Darnae were also disturbing to Webb. At those visits, appellant became angry at Darnae when he would refer to his foster mother as mom. Appellant seemed unable to grasp the developmental stage of a two year old. Webb further described a visit in which appellant's sister brought a toy that said "Fuck You" when a button was pressed. Appellant's sister allowed Darnae to play with the toy and press the button. Appellant did nothing to stop this interaction until Webb insisted that she either put the toy away or leave. In addition, appellant has failed to follow through with the services she has been offered and continues to have a problem attending school on a regular basis. She has, however, attended some parenting classes. Overall, Webb opined that appellant's attitude and opposition to authority had not changed since September 1998, and believed that an award of permanent custody of Darnae to LCCS was in his best interest.
Appellant then called Barb Cane and Marlene Butler to testify on her behalf. Barb Cane is a teacher in the Graduation Reality And Dual Services ("GRADS") program of the Toledo Public Schools. The GRADS program teaches parenting skills, prenatal development and independent living skills to pregnant and parenting teens. Cane testified that she has known appellant since October 1995, when appellant was pregnant and referred to the program by the East Side Central Elementary School. Cane further stated that appellant wanted to be a good mother and as long as appellant was attending school her participation in the program was good. In Cane's opinion, however, appellant did not receive the support from LCCS that a mother of her age needed. In particular, Cane believed that LCCS did not provide enough assistance with child care so that appellant could regularly attend school. On cross-examination, however, Cane admitted that she last had regular contact with appellant in the 1997-1998 school year, and has no current information on her school attendance or parenting. Cane further admitted that she was not aware that appellant was seeing her mother and Robert S. and violating the no-contact order. In Cane's opinion, exposing Darnae to appellant's mother and Robert S. would not be good for him.
Marlene Butler is a minister who works with troubled teens and who knows Tammy H. and appellant from church. Butler's testimony mostly focused on Tammy H. and the relationship between appellant and Tammy H. that Butler has witnessed. Butler testified that appellant and her mother seem close and they hug a lot. Butler did not believe that Tammy H. was a danger to appellant. Butler further stated that she has seen appellant with her son and that appellant is a good mother to him.
Finally, appellant testified on her own behalf. She stated that when she visits with Darnae she plays with him and teaches him things like his colors and how to spell his name. Regarding the toy that spewed obscenities at the one visit, appellant stated that she did nothing about the toy because her sister had given Darnae the toy, and "What I [sic] supposed to do, take my baby out her [sic] hands?" She also stated that when she missed parenting class it was because she could not find a ride. She also blamed her failure to attend the managing emotions class on her lack of transportation and denied that Melanie Webb had given her bus tokens. She further stated that she had stopped attending the Homes With A Heart programs because she felt that they were against her. Regarding her school attendance problem, appellant testified that regardless of whether she gets Darnae back, she wants to continue in school. She then expressed an interest in becoming a nurse "because I just like playing with blood and stuff[.]" Appellant further admitted, however, that she has already missed about half of the school year and currently her days are spent just hanging out, going to her sister's house, sleeping and watching television. Appellant further testified about her mother. Appellant stated that she forgave her mother for her past treatment of appellant and in her opinion her mother had changed. Appellant admitted that she violated the no-contact order with regard to both Tammy H. and Robert S. and further made it clear that she intended to continue a relationship with both of them.
In rebuttal, LCCS called Melanie Webb who testified that she had given appellant bus tokens so she could attend counseling sessions, parenting classes and Homes With A Heart programs.
In addition to the above witnesses, the state heard from Darnae's guardian ad litem who had also submitted a report. The guardian testified that in her opinion appellant has used poor judgment in a number of instances as a parent, has continued to violate the no-contact order and continues to want Darnae to know his father. In her report, the guardian further found that appellant had ignored the recommendation of her therapist to attend the managing emotions class and had not taken advantage of the maximum visitation with Darnae, choosing to see him once a week rather than the twice a week which would have occurred by attending parenting classes. The guardian then testified that it was in Darnae's best interest for LCCS to have permanent custody of him.
On March 26, 1999, the lower court filed a judgment entry in which it found pursuant to R.C. 2151.35.3(A)(4) and R.C. 2151.41.4 that Darnae cannot and should not be placed with either parent within a reasonable period of time, that it would be contrary to Darnae's welfare to be reunified with his family and that an award of permanent custody was in Darnae's best interest. The court further found that LCCS had provided services to appellant's family continuously since the fall of 1995 and that appellant was initially compliant with the case plan services. Accordingly, her child was returned to her in the spring of 1998. The court then found that since Darnae's second removal from appellant's custody, appellant was offered case plan services which required that she attend and complete counseling to address her anger, attend parenting classes to address inconsistent parenting practices, learn to respect adult authority and follow rules, and attend school on a regular basis. The court then held that, notwithstanding this reasonable case planning and diligent efforts by the agency to assist appellant in remedying the conditions that initially caused Darnae to be placed outside the home, appellant had failed continuously and repeatedly to substantially remedy the conditions that caused Darnae to be placed outside the home. The court further found that appellant had demonstrated a lack of commitment towards Darnae by failing to engage in the services which may have allowed her to be reunited with Darnae. The court then specifically stated other factors which it considered, including appellant's immaturity and inability to exercise good judgment and make appropriate decisions on Darnae's behalf. Finally the court found that an award of permanent custody would be in Darnae's best interest, that an adoptive placement would positively benefit him, that a grant of permanent custody would facilitate an adoption and that Darnae's need for a legally secure placement could be achieved without a grant of permanent custody. Accordingly, the lower court terminated appellant's parental rights to Darnae. It is from that judgment that appellant now appeals, raising the following assignments of error:
 "I. THE TRIAL COURT'S FINDING THAT PURSUANT TO O.R.C. 2151.41.4(E)(1) NOTWITHSTANDING REASONABLE CASE PLANNING AND DILEGENT [SIC] EFFORTS OF THE AGENCY, BOTH PARENTS HAVE FAILED CONTINUOUSLY AND REPEATEDLY TO SUBSTANTIAL [SIC] REMEDY CONDITIONS CAUSING THE REMOVAL OF THE CHILD WAS NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE.
 "II. THE TRIAL COURT'S FINDING THAT PURSUANT TO O.R.C. 2151.41.4(E)(4) BOTH PARENTS HAD DEMONSTRATED A LACK OF COMMITTMENT [SIC] BY FAILING TO ENGAGE IN THE SERVICES WHICH MAY HAVE ALLOWED THEM TO REUNITE WITH THEIR CHILD WAS NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE.
 "III. THE TRIAL COURT'S FINDINGS THAT THE APPELLANTS [SIC] IMMATURITY AND INABILITY TO EXERCISE GOOD JUDGMENT WERE RELEVANT FACTORS PURSUANT TO O.R.C. 2151.41.4(E)(12) THAT SUPPORTED AN AWARD OF PERMANENT CUSTODY WAS NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE."
Because these assignments of error are interrelated, we will discuss them together.
Appellant contends that the trial court's findings in support of the permanent custody award pursuant to R.C. 2151.41.4(E) were not supported by clear and convincing evidence. The disposition of a child determined to be dependent, abused or neglected is controlled by R.C. 2151.35.3 and the court may enter any order of disposition provided for in R.C. 2151.35.3(A). However, before the court can grant permanent custody of a child to the agency, the court must determine: 1) pursuant to R.C. 2151.41.4(E) that the child cannot or should not be placed with one of his parents within a reasonable time; and 2) pursuant to R.C. 2151.41.4(D) that the permanent commitment is in the best interest of the child. R.C. 2151.35.3(A)(4). R.C. 2151.41.4(E) provides that, in determining whether or not a child can or should be placed with a parent within a reasonable time, the court shall consider all relevant evidence. If, however, the court determines by clear and convincing evidence that any one of sixteen factors listed in the statute exist, the court must find that the child cannot be placed with the parent within a reasonable time. Those factors include:
 "(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
"* * *
 "(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;
"* * *
 "(12) Any other factor the court considers relevant." R.C. 2151.41.4(E)
Clear and convincing evidence is that proof which establishes in the mind of the trier of fact a firm conviction as to the allegations sought to be proved. Cross v. Ledford (1954),161 Ohio St. 469.
Under her first assignment of error, appellant argues that the trial court mistakenly confused the causes that led to Darnae's first removal with those that led to his second removal and then used appellant's failure to comply with the case plan services implemented after the first removal as grounds for finding that appellant failed to remedy the conditions that led to Darnae's second removal. As such, appellant contends that the court made an improper R.C. 2151.41.4(E)(1) finding. In our view, appellant has misconstrued the trial court's decision. Although the court noted that LCCS had been involved with appellant's family since 1995, and that appellant had been given a case plan after Darnae's first removal in 1996, the court further recognized that appellant successfully completed that case plan and Darnae was returned to her in the spring of 1998. The court then set forth the reason for Darnae's second removal: that appellant repeatedly placed Darnae at risk. The record supports the conclusion that appellant placed Darnae at risk by exposing him to Tammy H. and Robert S., by keeping him out all night, by not properly watching him, and by leaving him with inappropriate care givers. Due to that second removal, appellant was given a case plan that required her to complete counseling, attend parenting classes to address inconsistent parenting practices, regularly attend school, and learn to respect adult authority and follow rules. Each of these services was geared toward teaching appellant to recognize the factors that placed Darnae at risk. Appellant did not comply with the case plan and did not remedy the problems that caused Darnae's September 1998 removal. The trial court's finding pursuant to R.C. 2151.41.4(E)(1) was therefore supported by clear and convincing evidence.
The trial court's findings pursuant to R.C. 2151.41.4(E)(4) and (12) were further supported by clear and convincing evidence. Evidence that appellant failed to abide by the case plan services, continued to violate the no-contact order and continued to skip school, despite knowing that she could only regain custody of her son by abiding by those demands, demonstrated appellant's lack of commitment to Darnae. Finally, the record amply supports the trial court's finding that appellant was immature, unable to exercise good judgment and unable to make appropriate decisions on behalf of Darnae. Pursuant to R.C. 2151.41.4(E)(12), the court had the discretion to consider this evidence in support of its termination of appellant's parental rights.
Appellant's assignments of error are therefore not well-taken.
On consideration whereof, the court finds that substantial justice has been done the party complaining and the judgment of the Lucas County Court of Common Pleas, Juvenile Division, is affirmed. Court costs of this appeal are assessed to appellant.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
RESNICK, J., SHERCK, J., PIETRYKOWSKI, J., CONCUR.